1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7    GARY LEE PICKARD JR.,                    Case No.  12-cv-01489-JST

         Plaintiff,
8                                              **ORDER GRANTING PARTIAL
         v.                                    SUMMARY JUDGMENT**
9
                                               Re: ECF No. 22
10   MARCUS HOLTON, et al.,

         Defendants.
11

12

13        In this action for violation of section 1983 and various common law torts, defendants

14   Marcus Holton ("Holton") and the County of Sonoma ("County") move for partial summary

15   judgment as to plaintiff Gary Lee Pickard Jr.'s ("Pickard") sixth, seventh, and eighth causes of

16   action.  Pickard did not oppose the motion.  For the reasons stated below, the Court will grant it.

17   **I.    LEGAL STANDARD**

18        **A.    Motion for Partial Summary Judgment**

19        Summary judgment is proper when "there is no genuine dispute as to any material fact and

20   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See Celotex Corp. v.

21   Catrett, 477 U.S. 317, 323–24 (1986).  A dispute is genuine only if there is sufficient evidence for

22   a reasonable fact finder to find for the non-moving party, and material only if the fact may affect

23   the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  The

24   court must draw all reasonable inferences in the light most favorable to the non-moving party.

25   Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010).  However,

26   unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact

27   and will not defeat summary judgment.  Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th

28   Cir. 2008).  Partial summary judgment is appropriate for "part of each claim or defense" provided

1    there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of

2    law.  Fed. R. Civ. P. 56(a).

3         Where the moving party bears the burden of proof at trial, that party bears the initial

4    burden of producing evidence that would entitle it to a directed verdict at trial.  See C.A.R. Transp.

5    Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).  If the moving party does

6    not satisfy its initial burden, then the non-moving party has no obligation to produce anything, and

7    summary judgment must be denied.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099,

8    1102 (9th Cir. 2000).  If, however, the moving party satisfies its initial burden of production, then

9    the non-moving party must produce admissible evidence to show there is a genuine dispute of

10   material fact.  Id. at 1102–03.

11        "A party asserting that a fact cannot be or is genuinely disputed must support the assertion

12   by: (A) citing to particular parts of materials in the record, including depositions, documents,

13   electronically stored information, affidavits or declarations, stipulations (including those made for

14   purposes of the motion only), admissions, interrogatory answers, or other materials; or (B)

15   showing that the materials cited do not establish the absence or presence of a genuine dispute, or

16   that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

17   56(c)(1).  Affidavits and declarations "must be made on personal knowledge, set out facts that

18   would be admissible in evidence, and show that the affiant or declarant is competent to testify on

19   the matters stated."  Fed. R. Civ. P. 56(c)(4).  If a party fails to support an assertion of fact, the

20   court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact

21   undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting

22   materials — including the facts considered undisputed — show that the movant is entitled to it; or

23   (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).  "The choice among possible orders

24   should be designed to encourage proper presentation of the record."  Fed. R. Civ. P. 56(e), Adv.

25   Comm. Notes 2010 Amend.

26        However, "[w]here the evidentiary matter in support of the motion does not establish the

27   absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary

28   matter is presented."  Fed. R. Civ. P. 56(e), Adv. Comm. Notes, 1963 Amend.  The moving

United States District Court
Northern District of California

party's evidentiary burden cannot be abrogated by the opposing party's failure to respond; the moving party must affirmatively establish its entitlement to summary judgment. See Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003) (quoting Fed. R. Civ. P. 56(a)).

### B.   Pickard's Failure to Oppose the Motion for Partial Summary Judgment

Defendants filed the instant motion pursuant to Rule 56 on June 17, 2013. Mot., ECF No. 22. Under Civil Local Rule 7–3, Plaintiff's opposition or statement of non-opposition to the motion was due no later than fourteen days after the motion was filed. Plaintiff received notice of the motion electronically through the court's electronic case filing system, yet has not filed any response to the motion. The Court held oral argument on the motion on August 2, 2013.

District courts may not grant a motion for summary judgment simply because the nonmoving party does not file an opposition. See id. at 1182–83; Fed. R. Civ. P. 56, Adv. Comm. Notes, 2010 Amend. ("summary judgment cannot be granted by default even if there is a complete failure to respond to the motion"). Accordingly, the Court will determine whether Defendants have met the burden under Rule 56 to demonstrate that they are entitled to partial summary judgment. However, because the motion is unopposed, this Court considers all properly supported facts asserted by Defendants as undisputed for purposes of the motion. See Fed. R. Civ. P. 56(e)(2) (if a party fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion).

## II.   FACTS

On June 24, 2011, Holton – a Sheriff's Deputy for the County – shot Pickard twice after stopping his vehicle on Todd Road in Santa Rosa, California. First Amended Complaint ("FAC"), ECF No. 3, ¶¶ 16–19. Pickard sustained injuries to his bowels, large intestine, kidney, and lumbar spine. Id. ¶ 22. He was hospitalized at Santa Rosa Memorial Hospital and underwent multiple surgeries, including a colostomy, which required that he use a colostomy device in order to evacuate. Id. ¶¶ 21-24.

On August 5, 2011, Pickard was discharged into the custody of the County and was incarcerated in the Sonoma County Main Adult Detention Facility ("MADF"). Id. ¶¶ 26–27; Declaration of Debra Ann Kolman ("Kolman Decl."), ECF No. 24, ¶¶ 1–2. During his

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    incarceration, Pickard was provided medical services by the California Forensic Medical Group

2    ("CFMG.").  Kolman Decl. ¶¶ 1–2.

3         CFMG provided Pickard with colostomy bags.  Id. ¶ 9.  Pickard alleges these bags

4    frequently overflowed, burst, or became undone, and that the bags' contents spilled onto him.

5    FAC ¶ 29.  Following such spills, Pickard alleges he was often required to wait for an hour or

6    more in that state before jail staff responded to his requests to be cleaned.  Id. ¶ 32.

7         On September 30, 2011, Pickard received a nephrectomy to remove his kidney.

8    Declaration of James Luders ("Luders Decl."), ECF No. 25, ¶¶ 5–6.  After recovering from that

9    procedure, Pickard asked MADF staff about the potential of a reverse colostomy to eliminate his

10   need for a colostomy bag.  Id. ¶¶ 3, 7–8.  In December, 2011, Dr. Luders, the Medical Director at

11   MADF, contacted Dr. Kosakowski, the surgeon who would be performing the procedure, to

12   inquire about the potential reverse colostomy.  Id.  Dr. Luders was advised Pickard would not be

13   medically fit for surgery until approximately one year after the injury.  Id.  Again, in January,

14   2012, at Pickard's behest, Dr. Luders inquired whether the procedure could be done earlier.  Id. ¶

15   9.  Again, he was advised Pickard would not be ready until approximately June, 2012.  Id.  The

16   following April, Pickard was seen by Dr. Kosakowski for a pre-operative evaluation.  Id.

17   Following the evaluation, the first part of the reverse colostomy procedure was performed in May,

18   2012.  The second surgery to complete the procedure was done in November, 2012.  Id. ¶ 10.  The

19   procedure was successful and Pickard now has normal colon function and no longer requires a

20   colostomy bag.  Id. ¶¶ 10-12; Deposition Transcript of Gary Pickard ("Pickard Depo."), ECF No.

21   23, Ex. A, p. 195:3–4.

22        Throughout his incarceration, Pickard has been prescribed a daily regimen of pain

23   medication.  FAC ¶ 34.  Pickard alleges that, on multiple occasions, he was denied his medication,

24   even upon request, and that he has waited up to five hours before receiving it.  Id.

25        Pickard filed multiple grievances with jail staff concerning the issues with his colostomy

26   bags, his medication, his treatment from MADF staff, and their failure to facilitate the reverse

27   colostomy procedure as he requested.  FAC ¶ 38; see also Kolman Decl. Ex. A–E.

28        Plaintiff's sixth, seventh, and eighth causes of action concern the medical care he received

4

while in the custody of the County of Sonoma. Plaintiff's seventh cause of action for "Deliberate Indifference to Serious Medical Condition" alleges that Defendants acted, or omitted to act, with deliberate indifference to Plaintiff's serious medical needs. Plaintiff's eighth cause of action for "Retaliation for Engaging in Protected Speech Activity" alleges he submitted grievances regarding his medical treatment, and in response, Sonoma County retaliated by subjecting him to substandard medical care. Plaintiff's sixth cause of action for "Negligent Hiring, Retention, Training, Supervision and Discipline" alleges Sonoma County failed to adequately train its jail medical employees regarding the medical attention to be paid to pretrial detainees. He further alleges that this negligence stems from an informal custom or policy of promoting, tolerating, or ratifying deliberate indifference to the serious medical conditions of pretrial detainees.

In opposition to these claims, Defendants have submitted the signed declaration of James Luders, M.D. Dr. Luders is a licensed physician in the State of California and has been the Medical Director at MADF since 2007. Luders Decl. ¶ 1. As Medical Director, Dr. Luders treats inmates for medical conditions which arise while in custody at MADF. Id. His duties also include making arrangements for inmates' surgeries which take place outside of MADF. Id. Dr. Luders is personally familiar with Pickard and has seen him regularly since he was first transferred to MADF. Id. ¶ 2.

Defendants also submitted the signed declaration of Steven C. Mitchell ("Mitchell Decl."), counsel for Defendants. ECF No. 23 ¶ 1. On March 19, 2013, Mitchell attended the deposition of Pickard. Id. ¶ 2. Attached to Mr. Mitchell's declaration as Exhibit A are portions of Pickard's deposition transcript.

Finally, Defendants submitted the signed declaration of Debra Ann Kolman. Kolman is a registered nurse in the State of California and the Medical Program Manager for CMFG. Kolman Decl. ¶ 1. As Medical Program Manager, Kolman is responsible for overseeing the medical and nursing services provided at MADF, reviewing inmates' charts and records, coordinating care, coordinating staffing, and reviewing and responding to inmate grievances and requests. Id. Kolman is personally familiar with the treatment provided to Pickard, has been involved in responding to the requests and grievances filed by Pickard, and has personally reviewed Pickard's

United States District Court
Northern District of California

1  MADF medical file.  Id. ¶ 2.

2       Attached to Kolman's declaration are various documents relating to Pickard's medical

3  treatment at MADF.  Exhibit A includes a copy of an "Inmate Grievance Form," submitted by

4  Pickard on January 16, 2012, regarding his colostomy bags.  Exhibit A also includes a response to

5  Pickard's grievance, prepared by Kolman, on behalf of CMFG, which is dated January 20, 2012.

6  Exhibit B includes another copy of an "Inmate Grievance Form," submitted by Pickard on

7  February 11, 2012, also regarding his colostomy bags.  Exhibit B also includes a response to

8  Pickard's grievance, prepared by Kolman, on behalf of CMFG, dated February 17, 2012.

9  Attached as Exhibit C are copies of CFMG records detailing the dates and quantities of colostomy

10 bags provided to Pickard from January 8, 2012 through March 28, 2012.  Exhibit D features

11 another copy of an "Inmate Grievance Form," submitted by Picard on January 26, 2012,

12 concerning the timing of the reverse colostomy procedure.  Exhibit D also includes a response to

13 Pickard's grievance, prepared by Kolman, on behalf of CMFG, dated February 2, 2012.  Finally,

14 attached as Exhibit E is a copy of a Peer Review Memorandum prepared by Mark Netherda, M.D.,

15 a Deputy Public Health Officer for the County of Sonoma, Department of Health Services.

16 **III.    DISCUSSION**

17      Pickard's sixth, seventh, and eighth causes of action (his claims for deliberate indifference,

18 retaliation, and negligence) concern the medical care he received while in the custody of the

19 County of Sonoma.[1]

20     **A.    Deliberate Indifference to a Serious Medical Need**

21      In order to state a deliberate indifference claim, Plaintiff must first show a "serious medical

22 need" such that "failure to treat a prisoner's condition could result in further significant injury or

23 the unnecessary and wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 101 (1976)

24 (quotations and citations omitted).  Next, Plaintiff must show that Defendants' response to the

25 serious medical need was deliberately indifferent.  Id.  The second prong may be established by

26

27   [1] On July 26, 2013, Defendants filed an errata explaining, in part, that "Plaintiff's Sixth Cause of
Action, for negligent hiring, actually contains allegations arising from both the shooting and the
28 medical care he received.  Defendants' Motion for Partial Summary Judgment is only directed to
the medical claims contained in this claim for relief."  ECF No. 31 p. 2 n. 1.

allegations of "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. Deliberate indifference may be shown where prison officials or practitioners "deny, delay or intentionally interfere with medical treatment." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). In contrast, "mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Id.

From its inception, "deliberate indifference" has been substantially more difficult to establish than negligence, and has been associated with affirmatively culpable conduct. Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 169–173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). "Inadvertent failure" to provide medical care, "a complaint that a physician has been negligent in diagnosing or treating a medical condition," and medical malpractice claims do not qualify as deliberate indifference claims. Id. at 105 (quotations omitted). Prison officials must have "a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Liability will not lie unless the official knows of and disregards a substantial risk to inmate health or safety. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. The Ninth Circuit has consistently applied the Farmer test by requiring that prisoners alleging deliberate indifference to medical needs allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096.

Plaintiff's deliberate indifference claim alleges that "[d]uring the period of Plaintiff's incarceration as a pretrial detainee . . . Defendants acted, or omitted to act, with deliberate indifference to Plaintiff's urgent and immediate health care needs, to wit, the need to adequately care for his colostomy, his pain, and his need for colonic reattachment surgery." FAC ¶¶ 66–69. Plaintiff specifically alleges Defendants deliberately obstructed his attempts to have the colonic reattachment surgery performed, that he was given an inadequate supply of colostomy bags, was provided with bags of an inadequate quality, and that he often had to wait five hours to receive pain medication. Id. ¶¶ 28–34, 37.

United States District Court
Northern District of California

The Court construes these allegations in the light most favorable to Plaintiff.  The evidence submitted by Defendants, however, demonstrates that the medical treatment Pickard received while incarcerated was within the medical standard of care, that Defendants believed their actions were within the standard of care, and, that there was no deliberate indifference to Pickard's medical needs.

The record demonstrates that Defendants did not act with deliberate indifference to Pickard's need for colonic reattachment surgery.  According to Defendant's evidence, Pickard was mistaken about the timing of the surgery and did not understand that outside surgeons, rather than MADF staff, would make the decisions about the type of surgeries and when they would occur.  Pickard Depo. at 195:5–25, 201:10–202:13.  The County responded appropriately to Pickard's questions about timing of the surgery and Dr. Luders, the Medical Director for MADF, repeatedly contacted the performing surgeon regarding Pickard's concerns.  Luders Decl. ¶¶ 5–11.  The County did not control when the surgery was performed.  The performing surgeons, who are not employees of the County, made the decisions about the type of surgeries and when they would occur.  Id. ¶ 6; Pickard Depo. at 195:6-22.  Finally, the surgery was successfully performed in a medically appropriate timeframe.  Id. ¶¶ 5–11.

The record also demonstrates that Defendants did not act with deliberate indifference in regards to the care Pickard received related to his use of a colostomy bag.  First, the bags provided to Pickard at MADF were standard colostomy bags, which are regularly used in other hospitals and are within the medical standard of care.  Luders Decl. ¶ 4; Kolman Decl. ¶¶ 13–17.  Second, the bags were provided with a frequency that was also within the medical standard of care.  Kolman Decl. ¶¶ 13–17 & Ex. B, C.  Finally, Pickard admitted his issues with the colostomy bags were the result of a misunderstanding to which MADF staff responded, and which was ultimately resolved.  Pickard Depo. at 206:24–207:11.  Pickard testified that he wanted two colostomy bags available in order to have an extra back-up bag, not that he had no bags at all.  Id. at 208:4–209:18.  Moreover, Plaintiff testified that there was occasional "forgetfulness" by nurses, but admitted, despite his initial issues, once he learned to use the colostomy bag correctly, "it got settled" and "for the last five months, everything went smooth" resulting in "no problems at all."  Pickard

1   Depo. at 204:17–205:8, 206:19–208:3.

2          The record also demonstrates that Defendants did not act with deliberate indifference in

3   providing Pickard's pain medication.  Pickard testified Dr. Luders was "very helpful" in providing

4   pain management treatment.  Id. at 209:17–18; 210:7–25.  Pickard admitted that his pain treatment

5   was successful overall.  Id. at 210:7–25.  Also, Kolman, the Medical Program Manager at MADF,

6   testified "Pickard received all medications prescribed by medical doctors, including the frequency

7   called for in the prescriptions."  Kolman Decl. ¶¶ 13–17.  Finally, although Defendants admit

8   occasional isolated delays in providing Pickard's pain medication may have occurred due to

9   emergencies and safety considerations that are involved in any jail setting, there is no evidence

10  showing anyone ever intentionally withheld pain medication from Pickard.  See Mot. p. 10–11.

11         On these facts, the Court concludes that Defendants were not deliberately indifferent to

12  Plaintiff's medical needs.  The record, viewed in the light most favorable to Pickard, shows

13  Defendants did not control the timing of the reverse colostomy surgery, were attentive to Pickard's

14  inquiries about the timing of the procedure, and that the surgery was successfully performed at an

15  appropriate time.  Pickard's disagreement with the course of treatment, which he admitted was due

16  to his own misunderstanding, falls far short of establishing deliberate indifference.  See Toguchi v.

17  Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (to prevail on a claim involving choices between

18  alternative courses of treatment, a prisoner must show the chosen course of treatment was

19  medically unacceptable under the circumstances and was chosen in conscious disregard of an

20  excessive risk to the prisoner's health).  The record also demonstrates that the type of colostomy

21  bags and the frequency with which they were provided to Pickard were within the medical

22  standard of care, that his issues with the bags were due to his misunderstanding of how to use the

23  bags, that MADF staff worked to remedy his issues, and that those issues were resolved thereafter.

24  Finally, the record shows Pickard was satisfied with the pain management treatment he received

25  from Dr. Luders and nothing on the record shows that anyone intentionally withheld pain

26  medication from Pickard at any time.

27         For the foregoing reasons, Defendants are entitled to summary judgment on Pickard's

28  claim for deliberate indifference.  The record shows Pickard received medical care within the

United States District Court
Northern District of California

1   standard of care, which care Defendants believed to be reasonable.  At most, the record may show

2   that isolated occurrences of neglect occurred related to Pickard's colostomy bags.  Such instances

3   would not constitute deliberate indifference, even if they constituted negligence.  Jett, 439 F.3d at

4   1096 (isolated occurrences of neglect are insufficient to constitute a constitutional violation).

5   Moreover, nothing in the record demonstrates that Defendants' response to Pickard's medical

6   needs was deliberately indifferent.  Even if isolated occurrences of neglect occurred, Pickard

7   cannot establish Defendants were aware of a serious risk to him and yet knowingly failed to act.

8   Farmer, 511 U.S. at 834 (deliberate indifference requires a sufficiently culpable state of mind).

9   Finally, Pickard has made no showing that his issues with the timing of his surgery, his use of

10   colostomy bags, and the provision of his pain medication resulted in significant injury or wanton

11   infliction of pain.  Accordingly, essential elements of the deliberate indifference claim are negated

12   and Defendants are entitled to summary judgment on Plaintiff's claim.

### B.   Retaliation for Engaging in Protected Speech Activity

13

14        "Prison walls do not form a barrier separating prison inmates from the protections of the

15   Constitution."  Turner v. Safley, 482 U.S. 78, 84 (1987).  See also Bell v. Wolfish, 441 U.S. 520,

16   545 (1979).  Prisoners have a First Amendment right to file prison grievances.  See Rhodes v.

17   Robinson, 408 F.3d 559, 566 (9th Cir. 2005); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

18   Retaliation against prisoners for their exercise of this right is a constitutional violation and is

19   prohibited as a matter of "clearly established law."  See Rhodes, 408 F.3d at 566; Pratt v.

20   Rowland, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995).

21        Rhodes sets forth the five basic elements of a claim for First Amendment retaliation in the

22   prison context: (1) An assertion that a state actor took some adverse action against an inmate (2)

23   because of (3) that prisoner's protected conduct, that (4) chilled the inmate's exercise of his First

24   Amendment rights, and (5) that did not reasonably advance a legitimate correctional goal.

25   Rhodes, 408 F.3d at 567–68.  See also Barnett v. Centoni, 31 F.3d 813, 815–16 (9th Cir. 1994)

26   (per curiam).  A plaintiff who fails to allege a chilling effect may still state a claim if he alleges he

27   suffered some other harm.  Rhodes, 408 F.3d at 568 n. 11.

28        Plaintiff's eighth cause of action asserts that he "engaged in the protected activity of

United States District Court
Northern District of California

submitting oral and written grievances to Defendant SONOMA COUNTY and Sonoma County Jail staff . . . regarding his substandard medical care." FAC ¶¶ 67–70.  Plaintiff alleges that "[a]s a result of Plaintiff's engagement in such protected activity, SONOMA COUNTY . . . retaliated against Plaintiff by further subjecting Plaintiff to substandard medical care" and that "[s]uch action caused Plaintiff to suffer an injury that would cause a person of ordinary fitness to be chilled from further engaging in that activity." Id.

As discussed above, nothing in the record supports Pickard's allegation that he received substandard care.  And nothing in the record supports the allegation that Defendants responded to Pickard's grievances in a retaliatory manner.  Instead, Defendants responded to Pickard's grievances by addressing his complaints.  For instance, Dr. Luder responded to Pickard's inquiries about the timing of his reverse colostomy surgery by repeatedly contacting the performing surgeon, double checking about the timing of the procedure, and helping to ensure the surgery was successfully performed in a medically appropriate time.  Luders Decl. ¶¶ 5–12.  Also, in response to Pickard's grievances about his colostomy bags,  the Medical Program Manager "directed all the medics to be responsive and prompt" in dealing with Pickard's problems, and she also instructed the medical staff to "follow up with Mr. Pickard at every med pass [sic] to ensure he ha[d] enough bags." Kolman Decl. Exs. B, C.  By Pickard's own admission, following these responses, his care improved, his colostomy bag problems "got settled," and "for the last five months, everything went smooth."  Pickard Depo. at 204:17–205:8, 206:19–208:3; Kolman Decl. ¶ 16.

On these facts, Defendants did not retaliate against Plaintiff for filing of grievances.  The record, viewed in the light most favorable to Pickard, shows that rather than retaliate, Defendants responded to Pickard's grievances by working to address his issues.  Also, contrary to Pickard's allegations, the record shows he did not receive substandard medical care.  Undisputed evidence negates the essential elements of Defendant's retaliation claim, and Plaintiff has not presented evidence to the contrary.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for retaliation for engaging in protected speech activity.

**C.    Negligent Hiring, Retention, Training, Supervision and Discipline**

"California case law recognizes the theory that an employer can be liable to a third person

United States District Court
Northern District of California

United States District Court
Northern District of California

for negligently hiring, supervising, or retaining an unfit employee." Doe v. Capital Cities, 50 Cal. App. 4th 1038, 1054 (Cal. Ct. App. 1996). "Negligence liability will be imposed on an employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1139 (Cal. Ct. App. 2009) (internal quotations omitted). "Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." Delfino v. Agilent Technologies, Inc., 145 Cal. App. 4th 790, 815 (Cal. Ct. App. 2006). To prevail on this claim, Plaintiff must prove the following elements: (1) that an employee of Sonoma County was unfit or incompetent to perform the work for which he was hired; (2) Sonoma County knew or should have known that the employee was unfit or incompetent and that this unfitness or incompetence created a particular risk to others; (3) that the employee's unfitness or incompetence harmed Pickard; and, (4) Sonoma County's negligence in hiring, training, retaining, supervising or controlling the employee was a substantial factor in causing Plaintiff's harm. Judicial Council of California Civil Jury Instruction 426.

Plaintiff's sixth cause of action alleges:

> SONOMA COUNTY . . . had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its . . . Jail Medical Staff so as to avoid unreasonable risk of harm to citizens' rights. With deliberate indifference, SONOMA COUNTY, failed to take necessary, proper, or adequate measures in order to prevent the violation of Plaintiff's rights and injury to said Plaintiff. Sonoma County failed to adequately train its jail medical employees . . . in the proper and adequate policies and procedures regarding the medical attention to be paid to pretrial detainees suffering from serious medical conditions. This lack of adequate supervisorial training, and/or policies and procedures demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying the . . . unconstitutional and unlawful deliberate indifference to the serious medical conditions of pretrial detainees in the Sonoma County Jail, by individuals employed by SONOMA COUNTY.

FAC ¶¶ 60–62.[2]

Plaintiff cannot establish his sixth cause of action. The record shows MADF is certified and accredited biannually by the Institute for Medical Quality and had been at all times relative to

---

[2] Plaintiff's sixth cause of action also contains allegations of negligence that concern the shooting. Hence, the cause of action encompasses two separate and factually distinct claims. As discussed supra, n. 1, Defendants move for summary judgment only with respect to Plaintiff's claims regarding his medical treatment.

1  Pickard's complaints.  Kolman Decl. ¶ 16.  That certification required MADF to meet certain

2  qualifications, including standards governing hiring, treatment policies, credentialing and

3  licensures, health care requests, and grievances.  Id.  Nothing in the record shows that any training

4  or hiring was outside of the standard of care.  Furthermore, as shown above, the record does not

5  show Pickard's medical conditions were treated with deliberate indifference.

6         These facts, viewed in the light most favorable to Pickard, demonstrate that Sonoma

7  County was not negligent in its hiring and treatment policies.  Pickard cannot establish any breach

8  of any duty of care and cannot establish that any such breach caused him injury.  There is no

9  evidence that any training or hiring was outside the standard of care.  Moreover, there is no

10 evidence that the alleged negligence led to deliberately indifferent treatment.  Pickard's

11 unsupported conclusory assertions about policies and procedures do not create a genuine issue.

12 Accordingly, Defendants are entitled to summary judgment on Plaintiff's negligent hiring,

13 retention, training, supervision and discipline claim.

## IV.   CONCLUSION

15        For the foregoing reasons, Defendants' motion for partial summary judgment as to

16 Plaintiff's six, seventh, and eight causes of action, only as they relate to Plaintiff's medical claims,

17 is hereby GRANTED.

18        **IT IS SO ORDERED**.

19 Dated:  September 16, 2013

        _____
                JON S. TIGAR
            United States District Judge

United States District Court
Northern District of California

13