UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GARY LEE PICKARD,

       Plaintiff,

    v.

MARCUS HOLTON, et al.,

       Defendants.

Case No.  12-cv-01489-JST

**ORDER GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW**

Re: ECF No. 81

On January 6, 7, and 8, 2015, the Court heard a jury trial in this excessive force case. Plaintiff rested his case on January 8, 2015 after having introduced evidence from only one witness, Defendant Sonoma County Sheriff's Deputy Marcus Holton ("Deputy Holton").  Because Plaintiff failed to introduce sufficient evidence to permit a reasonable jury to render a verdict in his favor, the Court will grant Defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).

I.      BACKGROUND

     A.    **Procedural History**

      Plaintiff filed this case on March 26, 2012, alleging eight causes of action.  ECF Nos. 1, 3. On June 17, 2013, Defendants filed a motion for partial summary judgment, which the Court granted on September 16, 2013, dismissing Plaintiff's sixth, seventh, and eighth causes of action. ECF Nos. 22, 34.

      Defendants then filed a second motion for summary judgment regarding Plaintiff's remaining claims.  ECF No. 43.  The Court denied that motion in part and granted it in part.  ECF No. 53.  The Court found disputes of material fact related to the alleged excessive force incident, based in large part on deposition testimony by Plaintiff and his wife, D'Mitria Williamson-

United States District Court
Northern District of California

Pickard's.  Id.

At the pre-trial conference on December 19, 2014, Plaintiff voluntarily dismissed all then-existing claims for relief except his 42 U.S.C. § 1983 claim.  ECF No. 67 at 2.  Trial proceeded on that claim alone.

Jury trial commenced on January 6, 2015.  ECF No. 74.  On that date, the parties completed juror selection and the Court seated nine jurors.  Id.  The following day, both sides gave opening statements, and Plaintiff called his first witness, Deputy Holton.  ECF No. 75.  Deputy Holton's testimony continued into and concluded on January 8, 2015.  ECF No. 78.

Plaintiff's counsel had informed the Court and Defendants that Plaintiff and Williamson-Pickard would both testify at trial, but neither Plaintiff nor Williamson-Pickard were present in court on January 8, 2015.  ECF No. 78 at 4.  In the parties' joint pretrial statement, Plaintiff also proposed to call the following persons:  CHP Officer Sean Harvey; Sonoma County Sheriff's Office employee Debbie Little; Sonoma County Sheriff's Deputy Dave Pedersen;  Sonoma County Sheriff's Deputy Brian Keen; Sonoma County Sheriff's Deputy Travis Koeppel; Sonoma County Sheriff's Deputy Vance Eaton; Sonoma County Sheriff's Deputy Joe Dulworth; Sonoma County Sheriff's Office employee Orlando Rodriguez; Sonoma County Sheriff's Detective Brandon Cutting; Dr. Scott Benninghoven; Dr. Chris Kosakowski; and Olesya Plisovskijh.[1]  ECF No. 56 at 5-6.  But none of those persons was present in court, either.

Plaintiff's counsel attempted to contact Plaintiff and Williamson-Pickard, but couldn't locate them.  Id.  Plaintiff's counsel then moved unsuccessfully for permission to read Plaintiff and Williamson-Pickard's deposition testimony into evidence.  Id.; ECF No. 80 at 10:14-13:6.

Having no further witnesses, Plaintiff's counsel then rested his case.  Id.  Plaintiff's counsel neither sought a continuance nor provided an explanation for Plaintiff or Williamson-Pickard's absence.

Without testimony from either Plaintiff or Williamson-Pickard, Deputy Holton's testimony – unlike the situation at summary judgment – stood un-rebutted.

---

[1] Plaintiff also proposed to call Dr. Eugene Belogorsky, but the Court excluded his testimony *in limine*.  ECF No. 69.

2

United States District Court
Northern District of California

Defendants then moved orally for judgment as a matter of law pursuant to Rule 50(a). Defendants argued that the unrebutted evidence showed that Plaintiff posed a substantial threat to both law enforcement and to the community as a whole, and under both the general reasonableness test supplied by Graham v. Connor, 490 U.S. 386 (1989), as well as under the fleeing felon doctrine, Defendants were entitled to judgment in their favor as a matter of law.

### B.      Trial Evidence

Deputy Holton's testimony established the following facts:

Shortly before the incident that is the subject of this action, members of the Sonoma County Sheriff's Department, including Deputy Holton, were advised that Plaintiff was a parolee at large and that he was armed with a pistol and ammunition.  Members of the Sheriff's Department were also told that Plaintiff had stated on June 22, 2011 that he would "shoot it out with law enforcement" if and when police apprehended him.  A "be on the lookout" bulletin ("BOLO") contained this information and was issued to all on-duty Sheriff's deputies, including Deputy Holton, on June 23, 2011.  The Sheriff's Department updated the BOLO on June 24, 2011, with information that Plaintiff had returned to 878 Yuba Drive, his mother's residence and his last known residence address, to retrieve ammunition, and had fled on foot from two deputies who were in the area.

Holton made no efforts to search for Pickard on June 23, 2011, because he was too busy with other calls for service.  On the morning of June 24, 2011, however, after learning at the morning briefing that Plaintiff had retrieved more ammunition from 878 Yuba Drive and evaded law enforcement, Deputy Holton drove by that address.  Deputy Holton did not find him at that address in the morning.

Deputy Holton returned to the area at approximately 2:00 p.m. that afternoon.  Just before Deputy Holton turned onto Yuba Drive, he hit a key on his mobile computer notifying the Sheriff's Department personnel via dispatch that he was creating an event entitled "Gary Lee Pickard Junior, parolee at large."

After Deputy Holton turned onto Yuba Drive, a vehicle that appeared to be Plaintiff's[2] turned from a driveway directly in front of Deputy Holton's patrol car.  Deputy Holton immediately notified dispatch that he had encountered Plaintiff.  He requested a "Code 20," meaning that he needed emergency backup and that other deputies should come to Deputy Holton's location immediately, with lights and sirens activated.  He confirmed, using the last three digits of the vehicle's license plate number, that the vehicle was the one identified as Plaintiff's in the morning BOLO.  Shortly after confirming that he was following Plaintiff's car, Deputy Holton advised dispatch that he planned to have other units assist in executing a high-risk traffic stop of Plaintiff at the intersection of Todd Road and Highway 101.  Deputy Holton believed that intersection was suitable for multiple patrol cars to converge and apprehend Plaintiff.

Deputy Holton followed Plaintiff along Yuba Drive, then onto Stony Point Road, and finally onto Todd Road.  Deputy Holton followed Plaintiff for approximately two or three minutes, during which time he constantly updated Sheriff's dispatch as the events unfolded.  Deputy Holton was also receiving communications from other deputies that they were en route, and learned that a helicopter had been summoned to the intersection of Todd Road and Highway 101.

But Plaintiff never made it to the intersection, because he ran out of gas and pulled into a residential driveway.  The residence, located at 534 Todd Road in Santa Rosa, was in a rural residential neighborhood.  Worried about the safety of the home's occupants, Deputy Holton pulled his patrol car in behind Plaintiff, and again radioed a Code 20 to dispatch, informing dispatch that he was pulling into the driveway on Todd Road.

Asked why he did not proceed to the Highway 101 intersection, Deputy Holton explained that he could not just drive by Plaintiff at this point and meet up with other deputies before attempting to arrest Plaintiff.  Doing so would permit Plaintiff—who Deputy Holton believed would be willing to harm civilians, given his apparent willingness to shoot it out with police—to escape into the community, where he could do harm to citizens or take hostages.  Deputy Holton

---

[2] Roll marks on the side of the vehicle and blue painters' tape on the edges of the windows suggested the car had been painted recently.

United States District Court
Northern District of California

1    also explained that he would have potentially been a "sitting duck," with his back to Plaintiff, had

2    he driven past and not stopped Plaintiff in the driveway on Todd Road.

3            After Deputy Holton pulled his vehicle into the driveway behind Plaintiff's, Deputy Holton

4    exited his vehicle, and stood behind the driver's door of his vehicle, pointing his gun at the rear of

5    Plaintiff's vehicle.  Deputy Holton identified himself as a Sheriff's Deputy and ordered Plaintiff to

6    put his hands up.  Deputy Holton repeatedly yelled these commands.

7            Through the tinted rear glass of Plaintiff's vehicle, Deputy Holton could see head

8    movement on the driver's side and in the right front passenger area.  Plaintiff's car briefly rolled

9    backward a couple of feet.  In response, Deputy Holton backed away from his vehicle, thinking

10   that Plaintiff might ram his patrol car.

11           Deputy Holton then observed the driver's door of Plaintiff's vehicle open and Plaintiff's

12   left foot come out of the vehicle.  At this time, Deputy Holton also could see, through the driver's-

13   side passenger rear window of Plaintiff's car, Plaintiff digging around in the center console area of

14   his car.  Deputy Holton believed that Plaintiff was arming himself.

15           As Deputy Holton continued to shout commands, Plaintiff exited his vehicle and closed the

16   driver's door behind him.  Plaintiff began moving around the driver's side of his vehicle, with his

17   hands up near his shoulders.  His left shoulder was facing Deputy Holton, and he began to laugh.

18   Deputy Holton described Plaintiff as skipping or dancing around, as though he was about to run,

19   with his empty hands in Deputy Holton's view.

20           Thereafter, Plaintiff moved with one hand to reopen his car door and hid behind it.

21   Simultaneously, with his other hand, Plaintiff made a movement toward his waistband, as though

22   reaching for a weapon.  In response, Deputy Holton shot at Plaintiff, but missed.  At the time,

23   Deputy Holton was only aware of hearing a shot; he was not sure who had fired the shot until he

24   looked at his weapon and saw the hammer cocked in a position showing that he had fired.

25           Plaintiff then ran around the front of his vehicle, and away from the vehicle, toward the

26   corner of the residence's garage and a fence and an open field beyond.  Deputy Holton testified

27   that as Plaintiff was running, he continued to twist his body and move his hand toward his

28   waistband, and appeared to be reaching for or holding a gun.  Deputy Holton was concerned that

5

1   Plaintiff would escape into the community, potentially take hostages, or otherwise harm or kill

2   members of the community, and/or shoot him.  Accordingly, Deputy Holton fired four further

3   shots at Plaintiff, at least one of which hit Plaintiff, causing him to go to the ground.

4           Back up law enforcement officers arrived one or two minutes after shots were fired.

5           In connection with this incident, Plaintiff pled no contest to a charge that he:

6                   unlawfully attempt[ed] by means of threats and violence to deter and
                    prevent Deputy Holton, who was then and there an executive
7                   officer, from performing a duty imposed upon such officer by law
                    and did knowingly resist by use of force and violence said executive
8                   officer in the performance of his duties.

9   On that basis, he was convicted of violating California Penal Code section 69.

10  **II.      LEGAL STANDARD**

11          Judgment as a matter of law is appropriate when "a party has been fully heard on an issue

12  during a jury trial and the court finds that a reasonable jury would not have a legally sufficient

13  evidentiary basis to find for the party on that issue . . . ."  Fed. R. Civ. P. 50(a)(1); <u>see also</u> <u>Reeves</u>

14  <u>v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 149 (2000) (citations omitted).  If the evidence,

15  construed in the light most favorable to the nonmoving party, permits only one reasonable

16  conclusion—that the moving party is entitled to judgment—the court may grant the moving party

17  judgment as a matter of law.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 250-51 (1986).

18  **III.     ANALYSIS**

19          Excessive force claims like Plaintiff's are analyzed under the Fourth Amendment's

20  reasonableness standard as enunciated in <u>Graham</u>.  <u>Blanford v. Sacramento Cnty.</u>, 406 F.3d 1110,

21  1115 (9th Cir. 2005).  Per <u>Graham</u>, determining whether law enforcement's use of force is

22  reasonable requires consideration of the totality of the circumstances, including "the severity of

23  the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

24  others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  <u>Id.</u>

25  (citing <u>Graham</u>, 490 U.S. at 396).  Under this rubric, <u>Tennessee v. Garner</u>, 417 U.S. 1 (1985),

26  defined another category of excessive force cases, namely, fleeing felon cases.

27          In <u>Garner</u>, the Supreme Court explained that if a law enforcement officer

28                  has probable cause to believe that a suspect poses a threat of serious

United States District Court
Northern District of California

physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.  Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."

471 U.S. 11-12; see also Forett v. Richardson, 112 F.3d 416, 420 (9th Cir. 1997) (quoting Garner).

In this case, at both times that Deputy Holton fired his weapon, the evidence adduced at trial showed that he reasonably believed Plaintiff was armed and dangerous, and that he was ready, willing, and able to use his handgun, either against Deputy Holton or against members of the community.  This was evidenced by Plaintiff's statement that he would shoot it out with the cops; his conviction for using force or violence to resist Deputy Holton's execution of his duties; and Deputy Holton's testimony that Plaintiff was reaching for his waistband as he was running away from the Deputy.  Given this evidence, which was unrebutted, no reasonable jury could conclude that Deputy Holton's belief that Plaintiff posed an immediate threat of deadly force either to law enforcement or to community members was unreasonable.

Plaintiff argues that Deputy Holton's use of force was unreasonable because the deputy could have either remained in his vehicle and waited for back up, or simply gone by and not stopped behind Plaintiff in the driveway on Todd Road.  See Coles v. Eagle, 704 F.3d 624, 630 (9th Cir. 2012) (explaining that the existence of reasonable alternatives to the use of deadly force factors into the Graham analysis).

These arguments impose on Deputy Holton a burden the law does not require him to bear. Deputy Holton testified that confronting Plaintiff in the driveway of the Todd Road residence was the only way in which he could ensure that more lives would not be put at risk.  Deputy Holton reasonably believed Plaintiff was armed and dangerous, and that he posed a significant threat to the community, to people in surrounding residences, and to other law enforcement officers.  By confronting Pickard and attempting to bring him into custody, Deputy Holton was merely doing the job he was sworn to do.  A law enforcement officer confronted with a threat to his community is not obligated to do nothing, or worse, run away.

Further, and independently, the use of deadly force was objectively reasonable under

1   Garner and the fleeing felon doctrine.

2       Here, Deputy Holton reasonably believed that Plaintiff was armed and dangerous and that

3   his use of force was necessary to prevent Plaintiff's escape into a rural residential neighborhood,

4   and he repeatedly identified himself as a Sonoma County Sheriff's Deputy and ordered Plaintiff to

5   put his hands up.  Deputy Holton reasonably believed that if Plaintiff was willing to shoot police,

6   he could be willing to shoot members of the public or otherwise put other people's lives in danger.

7   Moreover, Plaintiff's conviction established that he made a threat or act of violence against

8   Deputy Holton in connection with the shooting.  Ultimately, Deputy Holton reasonably believed

9   that Plaintiff's flight posed an immediate threat of serious physical harm to Deputy Holton or to

10  other community members.

11      Given the undisputed evidence, Deputy Holton was lawfully entitled to use deadly force

12  both in response to an imminent threat of great bodily harm and/or death, and under the fleeing

13  felon doctrine.  For those reasons, Deputy Holton also is entitled to qualified immunity for his

14  conduct: his use of deadly force was objectively reasonable under clearly established law.  See

15  Blanford, 406 F.3d at 1119 (concluding that, because officers' actions in shooting a suspect were

16  not objectively unreasonable under clearly established law, the deputies were entitled to qualified

17  immunity).

18  **CONCLUSION**

19      For the foregoing reasons, the Court hereby grants Defendants' motion for judgment as a

20  matter of law pursuant to Federal Rule of Civil Procedure Rule 50(a).

21      IT IS SO ORDERED.

22  Dated:  February 11, 2015

23  _____

24          JON S. TIGAR
        United States District Judge

25

26

27

28